UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARTOSZ GRABOWSKI, individually and on behalf of similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>PLATEPASS, L.L.C.,<br><br>Defendant. | Case No. 20 C 7003<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bartosz Grabowski sues Defendant PlatePass, L.L.C. in a putative class action alleging that PlatePass violated provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). He also alleges breach of implied contract and unjust enrichment. PlatePass moves to compel arbitration and stay proceedings. [11]. For the reasons stated below, this Court grants PlatePass's motion [11], compels arbitration, and stays this litigation pending arbitration.

**I.  Background**

PlatePass operates a company that partners with car rental agencies, such as Hertz, to install electronic toll payment devices inside rental cars. [1] at 35, 39. PlatePass installs these devices in many rental cars and enables them automatically, regardless of whether customers request them or not. *Id.* at 39. The devices allow rental car customers to pass through tollways on open road tollway lanes, otherwise

1

known as I-PASS lanes in Illinois, instead of having to stop and wait in line at cash toll booths. *Id.* at 35–36. PlatePass charges toll costs, additional toll fees, and administrative fees for each day of the car rental term. *Id.* According to Plaintiff, these fees are excessive and unnecessary because customers can manually pay tolls themselves via their own I-PASS accounts or through an online payment system. *Id.* at 39–41. Thus, according to Plaintiff, PlatePass misrepresents its services and the necessity of its services and has unjustly enriched itself through collecting excessive fees. *Id.*

Plaintiff rented a car from Hertz in Des Plaines, Illinois around October 24, 2017, and returned it on November 4, 2017. *Id.* at 41–42. About a week after Plaintiff returned the car, PlatePass charged Plaintiff's credit card $28.85, which Plaintiff learned included three toll charges for which PlatePass charged Plaintiff double what a normal I-PASS user would pay for those tolls, in addition to daily administrative fees. *Id.*

Hertz requires each of its customers to enter into a written rental agreement with Hertz before it allows the customer to take possession of a car. [11-1] at 2–3. All Hertz customers receive and agree to two documents as part of that written agreement: (1) a rental record; and (2) a rental jacket. *Id.* at 2. Plaintiff does not dispute that he entered into this rental agreement with Hertz and received these documents when he rented his car.

According to Hertz, by no later than the beginning of 2014, all of Hertz's U.S. written agreements with customers, including the rental record and rental jacket,

2

contained an arbitration provision. *Id.* at 3. Plaintiff does not dispute that both the rental record and the rental jacket he received contain such a provision: "**ARBITRATION PROVISION: THIS AGREEMENT REQUIRES ARBITRATION OR A SMALL CLAIMS COURT CASE ON AN INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS ACTIONS. BY ENTERING INTO THIS AGREEMENT, YOU AGREE TO THE ARBITRATION PROVISION.**" *Id.* at 5, 10. The Arbitration Provision also defines the parties bound by the agreement and the agreement's scope:

> Except for claims for property damage, personal injury or death, ANY DISPUTES BETWEEN You and us ("us" and "we" for the purposes of this Arbitration Provision means The Hertz Corporation, ("Hertz") its parent and affiliate corporations, and their respective officers, directors and employees and any vendor or third party providing services for this rental transaction) MUST BE RESOLVED ONLY BY ARBITRATION OR IN A SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT ALLOWED. YOU AND WE EACH WAIVE THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER. . . .
>
> This Arbitration provision's scope is broad and includes, without limitation, any claims arising from or relating to this Agreement or any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation, equity, or any other legal theory. It is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

*Id.* The Provision further provides that the American Arbitration Association (AAA) would administer all arbitrations pursuant to its Consumer Arbitration Rules. *Id.* Notably, the Provision also states: "In any arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own

3

jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision." *Id.*

The rental record Plaintiff received did not just contain information about the Arbitration Provision; the record also contained a full page listing the services PlatePass could provide to him. *Id.* at 9. The rental record noted that Hertz "offer[s] PlatePass, an electronic toll payment system operated by by [sic] PLatePass [sic] LLC, for use on toll roads in the areas specified below." *Id.* The record went on to describe how to use PlatePass services, as well as the costs associated with PlatePass' services. *Id.*

Plaintiff filed this putative class action lawsuit in the Circuit Court of Cook County on October 23, 2020, alleging four claims against PlatePass: (1) PlatePass participated in deceptive acts in violation of the ICFA; (2) PlatePass participated in unfair acts or practices in violation of the ICFA; (3) breach of implied contract; and (4) unjust enrichment. [1] at 2, 45–53. PlatePass removed the case to this Court in November 2020, *id.* at 1–10, and now moves to stay the litigation and compel arbitration, [11]. Plaintiff opposes the motion. [17].

## II.  Legal Standard

In 1925, Congress enacted the Federal Arbitration Act (FAA) to counter generalized judicial hostility to arbitration as an alternative to litigation and to allow agreements to arbitrate to be enforced. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, a party may compel arbitration if it can demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within

4

the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). The party opposing arbitration bears the burden of proving the arbitration agreement unenforceable or proving that the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *A.D.*, 885 F.3d at 1063. To meet this burden, the party opposing arbitration must also identify a triable issue of fact on the purported arbitration agreement; such evidentiary burden is like that of a party opposing summary judgment. *Gilbert v. I.C. Sys., Inc.*, No. 19-CV-04988, 2021 WL 292852, at *2 (N.D. Ill. Jan. 28, 2021) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

### III. Analysis

In moving to compel arbitration, Defendant argues that the parties' rental agreement contains a delegation clause referring all issues of arbitrability—such as whether the case is arbitrable in the first instance—to the arbitrator and, thus, that this Court should honor that agreement and send the case to arbitration. [12]. For the reasons explained below, this Court agrees.

#### A. Delegation Clause

In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, the Supreme Court instructed that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*,

514 U.S. 938, 944 (1995)). A provision to arbitrate gateway issues—also known as a delegation clause—"is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Courts find clear and unmistakable evidence regarding parties' intent to delegate under two circumstances. First, a robust delegation clause conferring power to the arbitrator suffices: In *Rent-A-Center*, the Supreme Court held that a contract provision stating that the "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator. *Id.* at 66, 72.

Second, although the Seventh Circuit has not squarely addressed this issue, the consensus view among federal courts holds that the reference to or incorporation of AAA rules also constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator. *See 20/20 Foresight, Inc. v. McGuffin*, No. 20 C 6915, 2021 WL 619718, at *3 (N.D. Ill. Feb. 17, 2021); *Wilcosky v. Amazon.com, Inc.*, No. 19-CV-05061, 2021 WL 410705, at *11 (N.D. Ill. Feb. 5, 2021); *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D. Ill. 2020); *see also Bosse v. N.Y. Life Ins. Co.*, No. 19-2240, --- F.3d ----, 2021 WL 1185125, at *6 (1st Cir. Mar. 30, 2021); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021); *JPay, Inc.*

6

*v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Among other provisions, AAA Commercial Rule 7(a) expressly delegates arbitrability questions to the arbitrator, as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Assoc., *Commercial Arbitration Rules and Mediation Procedures* 13 (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf.

### B. The Parties Here Agreed to Delegate

The Arbitration Provision here falls meets both conditions under which courts find clear and unmistakable intent to delegate arbitrability.

First, it states that "In any arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision." [11-1] at 5. Like the arbitration clause in *Rent-A-Center*, this broad, robust language conferring authority on the arbitrator evinces clear and unmistakable intent to delegate arbitrability. 561 U.S. at 66, 72; *see also, e.g.*, *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 889, 891 (N.D. Ill. 2016) (holding that language providing that matters concerning "enforceability, revocability or validity" of

7

arbitration provision "shall be decided by an Arbitrator" sufficed to show intent to delegate arbitrability); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (holding that a contract stating that "any dispute . . . will be resolved by binding arbitration" clearly evinced intent to delegate).

Second, the Provision states that "the American Arbitration Association ('AAA') would administer all arbitrations pursuant to its Consumer Arbitration Rules (the 'Rules')." [11-1] at 5. This Court adopts the "consensus view" among federal courts and holds that the parties' agreement to arbitrate pursuant to AAA Rules also constitutes clear and unmistakable intent to delegate arbitrability. *Wilcosky*, 2021 WL 410705, at *11 (observing that "the consensus view of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability") (quoting *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017)).

In opposing arbitration, Plaintiff argues that Defendant is neither a party nor third-party beneficiary to the rental agreement and thus possesses no authority to enforce the Provision against Plaintiff. [17] at 5–12. Regardless of whether this argument has merit, the question of whether a purported nonsignatory can enforce an arbitration agreement concerns a question of arbitrability and, thus, must be decided by the arbitrator. *See, e.g., Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) (holding that a "nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability" that the arbitration agreement delegated to an arbitrator); *Eckert/Wordell Architects, Inc. v. FJM Props. Of Willmar, LLC*, 756 F.3d

8

1098, 1100 (8th Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability."); *see also, e.g.*, *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017); *Contec*, 398 F.3d at 211. Accordingly, because the rental agreement delegates arbitrability questions to the arbitrator, it is the arbitrator, not this Court, who must decide in the first instance the merits of whether Defendant can enforce the arbitration agreement against Plaintiff. *See Henry Schein*, 139 S. Ct. at 529 (instructing that "a court possesses no power to decide" arbitrability issues where an agreement contains a delegation clause).

### IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to compel arbitration, [11], compels arbitration, and stays this litigation pending the arbitration. The parties shall notify this Court within 10 days of an arbitration decision or of an action that ends the arbitration.

Dated: May 17, 2021

                                                              Entered:

                                                              John Robert Blakey
                                                             United States District Judge